UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SYSTEMS PRODUCTS
AND SOLUTIONS, INC.,

       Plaintiff,

CASE NO. 13-CV-14947

v.

HON. MARK A. GOLDSMITH

JOSEPH SCRAMLIN,

       Defendant.
_____/

**OPINION AND ORDER
(1) DENYING DEFENDANT'S MOTION TO DISMISS (Dkt. 14) and (2) GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO QUASH (Dkt. 21)**

## I. INTRODUCTION

In this breach of contract case, Plaintiff Systems Products and Solutions, Inc. ("SPS") alleges that Defendant Joseph Scramlin, its former employee, breached his employment agreement and fiduciary duties by appropriating, stealing, and marketing proprietary information related to a bid for a federal government contract. The matters presently before the Court are Scramlin's motion to dismiss (Dkt. 14) pursuant to Federal Rule of Civil Procedure 12(b)(1), and Scramlin's motion to quash subpoenas (Dkt. 21). The issue presented by the motion to dismiss is whether the Court has jurisdiction over the subject matter. The issue presented by the motion to quash is whether SPS can compel third parties to disclose Scramlin's email and phone records. The Court has reviewed the motions, SPS's response briefs (Dkts. 17, 23), and Scramlin's reply to the motion to dismiss (Dkt. 18) (he did not file one for the motion to quash), and it held oral argument on April 10, 2014. For the reasons outlined below, the Court denies the motion to dismiss, and grants in part and denies in part the motion to quash.

## II. BACKGROUND[1]

In 2008, SPS hired Scramlin to assist with developing training programs for the Tank-automotive and Armament Command ("TACOM") at the Detroit Arsenal in Warren, Michigan. Compl. ¶ 8 (Dkt. 1). Pursuant to a contract between SPS and TACOM, SPS provided training materials for the maintenance and repair of battle tanks. Id. As part of Scramlin's employment with SPS, the parties entered into a non-disclosure agreement and an employee agreement. Id. ¶¶ 9-10.

SPS compensated Scramlin with a salary of $90,000, plus benefits. Id. ¶¶ 17-18. By 2013, Scramlin was the manager in charge of the Sterling Heights, Michigan office, supervising other employees, including Edward Knappenberger, Jr. and Anne Haara. Id. ¶ 19. Because of his supervisory role, Scramlin had access to SPS's confidential information regarding its contract with, and contractual bids to be submitted to, TACOM. Id. ¶ 20.

In October 2013, SPS's contract with TACOM (known as the "ABCT Contract") was expiring, and SPS was completing a bid for a new contract.[2] Id. ¶ 22. However, SPS alleges that in or around June 2013, Scramlin told his supervisees that he was not confident that SPS would be successful in its bid for renewal of the ABCT Contract. Id. According to SPS, Scramlin expected that a competitor, PD Systems ("PDS"), would likely get the bid if SPS's bid failed. Id.

Through John Macik, a friend of Scramlin's at PDS, Scramlin learned that PDS would need to hire additional employees if it won the bid. Id. After the June 2013 conversation,

---

[1] The facts are taken from the complaint, the attachments to the briefing, and the representations made by counsel at the motion hearing.

[2] In SPS's most recent filing, the brief in response to Scramlin's motion to quash, SPS states that the contract at issue is the "ABCT contract," and that all references to the "HBCT contract" in the complaint, or in other briefing, are errors. Pl. Br. in Resp. to Mot. Quash at 4 n.1 (Dkt. 23).

Scramlin allegedly told two of his supervisees that he had been interviewing with PDS. Id. ¶ 25.

At some point in October 2013, SPS completed storyboards and a flowchart for its TACOM bid. Id. ¶ 26. On October 18, 2013, Scramlin informed his supervisees that they were being furloughed, but would be recalled if SPS was awarded the continuation of the ABCT Contract. Id. Scramlin was not furloughed. Id. ¶ 27.

On October 30, 2013, Scramlin called two of his supervisees — Knappenberger and Haara — and told them that Macik had consulting positions available at PDS for the purpose of helping with storyboards and a flowchart for a bid for the ABCT contract. Id. ¶¶ 23, 28. On November 1, 2013, Scramlin told Knappenberger that he had made some revisions to the storyboards and flowchart originally created by Knappenberger and Haara for SPS's bid, so that the items could become part of PDS's bid. Scramlin, however, told Knappenberger that he could only make limited changes to the computer files, and he asked Knappenberger to make further changes. Id. ¶ 30.

According to SPS, Scramlin also told Knappenberger to call Macik "right away" because Macik was confident that he could get Knappenberger a $5,000 signing bonus and $4,000 more in salary. Id. ¶ 31. Scramlin also emailed Knappenberger regarding SPS's flowcharts, requesting further revisions. Id. ¶ 32.

SPS learned of Scramlin's conduct the same day (November 1), and SPS's counsel sent a cease and desist letter to Scramlin. Id. ¶ 33. Scramlin denied working with PDS on the ABCT Contract bid. Id. SPS then terminated Scramlin's employment on November 5, 2013. Id. ¶ 35. During Scramlin's exit interview, he denied possessing any of SPS's property, such as computer hardware and software. Id. ¶ 37. However, SPS conducted an inventory of Scramlin's office and determined that a "computer workstation, a laptop, two external hard drives, a flash drive, a

camcorder, a digital camera, installation discs for software, and miscellaneous equipment were missing." Id. ¶ 38.

According to the complaint, the ABCT Contract is worth over $1 million, and SPS invested tens of thousands of dollars in preparing its contract bid. Id. ¶ 39. SPS alleges that Scramlin's conduct put its investment at risk because he was "converting" confidential information so that it could be used by one of SPS's competitors. Id. ¶¶ 40-43.

The complaint contains seven counts: (i) breach of contract, (ii) breach of common law fiduciary duties, (iii) violation of Michigan's Uniform Trade Secrets Act, Mich. Comp. Laws § 445.1903, (iv) tortious interference with existing business relations, (v) tortious interference with prospective business relations, (vi) unfair competition, and (vii) conversion. The prayer for relief requests a TRO, preliminary injunction, and SPS's "costs, expenses, and reasonable attorneys [sic] fees." Compl. at 14-15.

Upon filing the complaint on December 4, 2013, SPS also filed a motion for a TRO and preliminary injunction (Dkt. 2). The parties then agreed to a "stipulated preliminary injunction" shortly thereafter. 12/17/13 Order (Dkt. 11). By the terms of the stipulated injunction, Scramlin was restrained from (i) using SPS's information, (ii) directing business away from SPS for a period of 18 months, (iii) working on a bid for a contract with TACOM with a competitor of SPS for a period of 18 months, and (iv) destroying or altering any of SPS's data in his possession. Id. The stipulated injunction also required Scramlin to make himself available for a deposition, return the computer and documents to SPS, and permit a forensic examination of any computer he had used when working for SPS. Id.

Scramlin then filed the instant motion to dismiss. In response, SPS attached various documents to its brief, including an affidavit from its President Randall Tieszen, emails exchanged

between Scramlin and Macik, and a transcript from Scramlin's deposition, which apparently occurred on January 27, 2014. The affidavit confirms much of what SPS alleged in its complaint, including an averment that SPS expended $105,000 in preparation of its bid. Tieszen Aff. ¶ 6 (Dkt. 17-2). On reply, Scramlin expanded the record further by attaching correspondence between PDS and TACOM from November 2013, evincing that PDS had decided not to bid as a prime contractor under the ABCT contract.

Lastly, at the motion hearing, the parties, through counsel, stated that SPS had won the renewed ABCT contract with TACOM on an unspecified date after the briefing on the motion to dismiss had been completed, but before the motion hearing.

### III. ANALYSIS

The Court first addresses the motion to dismiss and, finding that it lacks merit, proceeds to analyze the motion to quash.

**A. The Motion to Dismiss for Lack of Subject-Matter Jurisdiction (Dkt. 14)**

**1. Standard of Decision**

Scramlin seeks to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(1), arguing that the Court lacks subject-matter jurisdiction.[3] In ruling on a motion to dismiss, the Court may consider the entire complaint, documents incorporated by reference in the complaint and central to the claims, and matters on which a court may take judicial notice. Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007). Under Rule 12(b)(1), the

---

[3] The Court notes that Scramlin's motion to dismiss the complaint for lack of subject-matter jurisdiction was made after he had filed his answer to the complaint. Motions made pursuant to Rule 12(b) must be filed prior to filing a responsive pleading. Although untimely, the Court construes this late-filed motion as a "suggestion" that it lacks subject-matter jurisdiction, and such "a filing may be made at any time." S.J. v. Hamilton Cnty., Ohio, 374 F.3d 416, 418 & n.1 (6th Cir. 2004) (citing Fed. R. Civ. P. 12(h)(3) and Von Dunser v. Aronoff, 915 F.2d 1071, 1074 (6th Cir. 1990)).

plaintiff has the burden of proving jurisdiction. Moir v. Greater Cleveland Reg'l Transit Auth., 895 F.2d 266, 269 (6th Cir. 1990). "Moreover, the court is empowered to resolve factual disputes when" subject-matter jurisdiction is challenged. Id.

"Motions to dismiss for lack of subject[-]matter jurisdiction fall into two general categories: facial attacks and factual attacks." United States v. Ritchie, 15 F.3d 592, 598 (6th Cir. 1994). A facial attack challenges the sufficiency of the jurisdictional allegations, and "the court must take the material allegations of the petition as true and construed in the light most favorable to the nonmoving party." Id. A factual attack challenges "the factual existence of subject[-]matter jurisdiction," and the Court, on reviewing a motion raising a factual attack, "is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." Id.

Scramlin's motion presents factual attacks because it challenges whether the amount-in-controversy requirement for diversity jurisdiction has been met, and raises arguments that SPS's claims are either unripe or moot. The Court first addresses the argument concerning diversity jurisdiction, and then addresses the arguments about ripeness and mootness.

### 2. Amount in Controversy

Under the diversity-jurisdiction statute, parties must be citizens of different states and the amount in controversy must exceed $75,000. 28 U.S.C. § 1332. Scramlin argues that the Court lacks jurisdiction over the subject matter because SPS has not claimed an ascertainable amount of damages necessary for the diversity-jurisdiction threshold of $75,000. Def. Br. at 6-7. Scramlin concludes that, without a claim for damages, the Court's $75,000 jurisdictional threshold cannot be met. Id.

In response, SPS argues that the Court's jurisdiction should be determined at the filing of the complaint, and that there is no legal certainty that SPS's damages are less than $75,000. Pl.

Br. 10-14 (Dkt. 17). SPS asserts that the amount in controversy exceeds $75,000 because (i) Scramlin breached his fiduciary duties to SPS and, under Michigan law, Scramlin's salary and benefits, in excess of $90,000, are to be disgorged to SPS, id. at 11, (ii) SPS invested over $100,000 in its products that Scramlin attempted to appropriate, id. at 11-12, (iii) the contract at issue is worth over $1 million and Scramlin's conduct has potentially deprived SPS of obtaining that contract, thereby raising a theory of "competitive losses," id. at 13, and (iv) Scramlin has defied the injunction requiring him to return computer ware to SPS, id. at 14. Upon review of the parties' arguments and pertinent law, the Court agrees with SPS and rejects Scramlin's argument.

The Sixth Circuit has held that a court must not dismiss an action for failure to meet the amount-in-controversy requirement unless it appears "'to a legal certainty that the claim is really for less than the jurisdictional amount.'" Basicomputer Corp. v. Scott, 973 F.2d 507, 510 (6th Cir. 1992) (quoting St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 289 (1938)). "A complaint may reach the jurisdictional amount by including claims for losses that are difficult to quantify, such as competitive losses." Id.

According to the complaint, SPS paid Scramlin a salary of $90,000, Compl. ¶ 17, and the loss of confidential information by the alleged conduct will exceed $75,000, id. ¶ 66. Scramlin's salary, his supervisory role, the investment made by SPS concerning the bid, and the value of the ABCT contract support SPS's allegation that the value of the information is over $75,000, and that the amount in controversy thus meets the threshold of section 1332. Basicomputer, 973 F.2d at 510 (holding that amount-in-controversy requirement was met where employees generated sales for employer over $100,000). Furthermore, Scramlin did not respond to SPS's authority regarding damages that are "difficult to quantify, such as competitive losses." Def. Br. at 13. The Court concludes that the amount in controversy does not appear, to a legal certainty, to be less

than $75,000. Basicomputer, 973 F.2d at 510.

Accordingly, the Court denies Scramlin's motion with respect to the Court lacking diversity jurisdiction.

### 3. Ripeness

Scramlin's motion also contains an argument regarding ripeness. Scramlin claims that — at the time of filing the motion — SPS's claims were not ripe because the contract had not yet been awarded, and SPS had not yet suffered damages. Def. Br. at 6. SPS responds that (i) its claims are ripe because it has been harmed by Scramlin's breaches of his fiduciary and contractual duties, and (ii) it can seek redress prior to incurring further damages from Scramlin's conduct. Pl. Br. at 14-15. The Court rejects Scramlin's arguments and agrees with SPS that its claims are ripe.

The "jurisdiction of federal courts is limited by Article III of the United States Constitution to consideration of actual cases and controversies, therefore federal courts are not permitted to render advisory opinions." Adcock v. Firestone Tire and Rubber Co., 822 F.2d 623, 627 (6th Cir. 1987). Ripeness is a doctrine that tests whether an actual case or controversy exists for a court to adjudicate. To assess ripeness, courts employ a two-pronged inquiry, asking (i) whether the claim is fit for judicial decision in the sense that it arises in a concrete factual context and concerns a dispute that is likely to come to pass, and (ii) what is the hardship to the parties of withholding court consideration. Warshak v. United States, 532 F.3d 521, 525 (6th Cir. 2008).

Each of SPS's seven counts has a concrete factual context and concerns a dispute that already occurred — Scramlin's conduct while employed at SPS. Id. SPS's claims concern the alleged conduct in 2013 that led up to SPS's termination of Scramlin's employment. Whether TACOM awarded SPS the contract (which it has) is beside the point; the focus is on Scramlin's alleged conduct and whether he adhered to his contractual obligations and fiduciary duties.

Furthermore, withholding consideration of SPS's claims would be a hardship to SPS because it would deprive SPS of the ability to enforce the terms of the agreements it entered into with Scramlin. Id.

### 4. Mootness

Lastly, Scramlin's motion raises a defense that SPS's claims are moot. Scramlin argues that SPS's claims are moot because — again, at the time of filing the motion — the bidding on the TACOM project had closed. Def Br. at 7. Also, although referenced in his argument regarding ripeness, Scramlin argues the complaint lacks a demand for damages, a deficiency he claims cannot be cured by permitting the filing of an amended complaint. Id. at 6-7. SPS responds that its claims are not moot because Scramlin has not ceased in breaching his fiduciary and contractual duties, and Scramlin has violated the stipulated injunction. Pl. Resp. at 15.

The doctrine of mootness is derived from Article III of the Constitution, which limits the jurisdiction of federal courts to "Cases" and "Controversies." U.S. Const. art. III, § 2; DeFunis v. Odegaard, 416 U.S. 312, 316 (1974) ("The inability of the federal judiciary to review moot cases derives from the requirement of Art. III of the Constitution under which the exercise of judicial power depends upon the existence of a case or controversy."). A question of mootness "'is a federal one which a federal court must resolve before it assumes jurisdiction.'" Fialka-Feldman v. Oakland Univ. Bd. of Trustees, 639 F.3d 711, 715 (6th Cir. 2011) (quoting DeFunis, 416 U.S. at 316). "The test for mootness is whether the relief sought would, if granted, make a difference to the legal interests of the parties." McPherson v. Michigan High Sch. Athletic Ass'n, Inc., 119 F.3d 453, 458 (6th Cir. 1997) (quotation marks omitted).

Here, at the time the complaint was filed, SPS's claims were not moot because Scramlin, according to the allegations, had breached his contractual and fiduciary duties. Fialka-Feldman,

639 F.3d at 715. And now, even though there is an injunction in place and the contract has been awarded, there is still no mootness because SPS wants to enforce the injunction, which it claims has been violated. This, surely, would make a difference to the legal interests of the parties. McPherson, 119 F.3d at 458.

Accordingly, the Court denies Scramlin's motion with respect to his argument about mootness.[4]

### B. The Motion to Quash (Dkt. 21)

#### 1. The Parties' Arguments

In addition to contesting jurisdiction, Scramlin filed a motion to quash subpoenas issued by SPS (Dkt. 21). Apparently, SPS is seeking Scramlin's phone records and emails related to the ABCT contract held by Scramlin's cell phone company, AT&T, and internet service provider,

---

[4] Upon review of the complaint, the Court finds that, although the complaint references "damages," see Compl. ¶¶ 52, 53, 57, 74, 79, the complaint does not actually contain a claim for damages in the prayer for relief. To the contrary, the prayer for relief only requests a TRO, preliminary injunction, and costs, expenses, and reasonable attorneys' fees. Id. at 14-15. Therefore, on the face of the complaint, the relief sought by SPS was primarily injunctive. Arguably, this is what SPS obtained when the parties entered into the "stipulated preliminary injunction." 12/17/13 Order (Dkt. 11). At the motion hearing, however, SPS's counsel took a different stance. Upon inquiry by the Court about the apparent lack of a damages claim in the complaint, SPS's counsel stated that his client was indeed seeking damages, and he referred to the portions of the complaint stating that SPS suffered "damages." 4/10/14 Tr. at 18-20. (Because no party has ordered a final transcript from the hearing, the Court cites to the rough transcript.). Any omission of a claim for damages, according to SPS's counsel, was inadvertent. Id. Although the Court will not "conjure up a damages claim where none exists," Youngstown Publishing Co. v. McKelvey, 189 F. App'x 402, 407 (6th Cir. 2006), the Court is cognizant of the numerous references to damages in the complaint and SPS's counsel's averments that SPS does indeed seek damages. Therefore, in light the ambiguity of the complaint regarding damages and the above-mentioned factual development of SPS being awarded the ABCT contract, the Court believes that the interests of justice may be best served if SPS filed a motion for leave to amend the complaint, attaching, of course, a proposed amended complaint to the motion. See Fed. R. Civ. P. 15(a)(2).

Comcast. See Subpoenas (Dkt. 21-1).[5]

In seeking to quash the subpoenas, Scramlin claims that he was not given notice of the subpoenas until after they were served under Federal Rule of Civil Procedure 45(a)(4). Def. Br. at 2 (Dkt. 21). He also argues that the subpoenas seek irrelevant information, and that the subpoena targeting his phone records is harassing because SPS seeks all the phone numbers Scramlin called throughout 2013. Id. Lastly, Scramlin claims that the Stored Communications Act ("SCA"), 18 U.S.C. § 2701 et seq., prohibits the disclosure of the emails, although Scramlin concedes that his phone records' metadata are not covered by the SCA. Id. at 2-6.

SPS responds by arguing that Scramlin lacks standing to contest the subpoenas because he has not established a personal right or privilege to the information sought. Pl. Br. at 10-11 (Dkt. 23). Even if Scramlin has standing, SPS argues that Scramlin has failed to establish any of the bases for quashing a document subpoena served on a third party under Rule 45. Id. at 11-12. SPS also maintains that seeking the phone records and emails is relevant and/or calculated to lead to the discovery of admissible evidence. Id. at 12-13. Finally, SPS argues that, despite the SCA, the Court has the power to require Scramlin "to provide consent for the disclosure and production of the emails in his account." Id. at 13-15. With respect to emails, SPS would like the Court to require Scramlin "to consent to the production of the metadata for the emails, which would include the sender's name, recipient's email address, date, and subject line." Id. at 15. SPS further suggests that, after the production of the metadata, a review of the metadata can reveal which emails might be relevant, and that Scramlin should then "be required to consent to the production

---

[5] The subpoena to AT&T requests "[a]ll usage records for outgoing and incoming calls related to Subscriber name: Joseph B. Scramlin and phone number: 586-549-4336 for the period January 1, 2013 through December 31, 2013." Subpoenas (Dkt. 21-1). The subpoena to Comcast demands "[a]ll outgoing emails from and incoming emails to jscramlin01@comcast.net for the period January 1, 2013 through December 31, 2013." Id.

of the contents of the relevant emails." Id.

### 2. The Notice Requirement Under Rule 45(a)(4)

Scramlin's argument that SPS did not provide adequate notice under Rule 45, and thus the subpoenas must be quashed, is without merit. Rule 45 provides that, if a subpoena commands the production of documents or electronically stored information, "then before it is served on the person to whom it is directed, a notice and a copy of the subpoena must be served on each party." Fed. R. Civ. P. 45(a)(4). Scramlin argues that SPS violated Rule 45 because it sent the subpoenas to AT&T and Comcast before providing him notice. SPS does not respond to this argument, although it apparently faxed the subpoenas to AT&T and Comcast and then, later on the same day, emailed notice to Scramlin. See Subpoenas (Dkt. 21-1) (evincing March 10, 2014 to be the date in question). Scramlin, however, filed his motion to quash the next day, on March 11, 2014. Scramlin, therefore, has not been prejudiced by any technical violation of Rule 45, and the Court deems it prudent to address the merits of his motion. Black v. Kyle-Reno, No. 1:12-cv-503, 2014 WL 667788, at *2 (S.D. Ohio Feb. 20, 2014) (addressing merits of motion to quash where non-moving party's failure to adhere to the notice requirement of Rule 45 did not prejudice moving party, who filed motion to quash).

### 3. Standing

In seeking to quash a Rule 45 subpoena, a party generally "has no standing to seek to quash a subpoena directed to a non-party." Underwood v. Riverview of Ann Arbor, No. 08-CV-11024-DT, 2008 WL 5235992, at *1 (E.D. Mich. Dec. 15, 2008). A party, however, has standing if it can demonstrate a personal interest or claim a privilege. Id.; see also Mann v. Univ. of Cincinnati, 114 F.3d 1188 (Table), at *6 (6th Cir. 1997) (recognizing that a party usually does not have standing to contest a third-party subpoena unless the party invokes a personal interest or

claims a privilege).  The "movant has the burden of persuasion on a motion to quash a subpoena." 9A Charles Alan Wright & Arthur R. Miller, et al., Federal Practice and Procedure § 2459 (3d ed. 1998)).

Personal rights or interests sufficient to confer standing to quash a subpoena can arise in a variety of contexts.  For example, courts have recognized that a party has a personal interest in his or her employment records held by a subpoenaed non-party, Halawani v. Wolfenbarger, No. 07-15483, 2008 WL 5188813, at *1 (E.D. Mich. Dec. 10, 2008) (holding that the defendant had standing to move to quash subpoena sent to the defendant's employer because the request involved his personnel file and his personal address), and in banking records of a party in the possession of a financial institution, Catskill Dev., L.L.C. v. Park Place Ent. Corp., 206 F.R.D. 78, 93 (S.D.N.Y. 2002).

Here, the Court rejects SPS's argument that Scramlin lacks standing to contest the subpoenas.  Although Scramlin does not invoke a privilege, he does claim a personal interest as to his personal — as opposed to work — emails and phone records.  Information contained within these records falls within the scope of a "personal interest," akin to a personnel file that contains a personal address.  Halawani, 2008 WL 5188813, at *1.  Therefore, Scramlin has standing to contest the subpoenas.

### 4. Applicability of the SCA

Next, the Court addresses Scramlin's argument that the SCA prevents Comcast from disclosing his emails pursuant to SPS's subpoena.  In such a situation where a party has issued a civil discovery subpoena to a third party, courts have held that such subpoenas are subject to the prohibitions of the SCA.  See, e.g., F.T.C. v. Netscape Commc'ns Corp., 196 F.R.D. 559 (N.D. Cal. 2000).  This is so because, by its terms, the SCA prohibits service providers from knowingly

disclosing the contents of a user's electronic communications, such as the content of email. The SCA states that "a person or entity providing an electronic communication service to the public shall not knowingly divulge to any person or entity the contents of a communication while in electronic storage by that service." 18 U.S.C. § 2702(a)(1). The "contents" of a "wire, oral, or electronic communication" is defined as "any information concerning the substance, purport, or meaning of that communication." 18 U.S.C. §§ 2510(8), 2711(1).

Emails stored by a service provider are subject to the SCA:

> Subject to certain specifically-enumerated exceptions, the SCA essentially prohibits providers of electronic communication or remote computing services to the public from knowingly divulging the contents of their customers' electronic communications or the records relating to their customers. See 18 U.S.C. § 2702(a) & (b). But as many courts have explained, civil subpoenas to a non-party, however, are not among section 2702(b)'s "unambiguous exceptions." In re Subpoena Duces Tecum to AOL, LLC, 550 F. Supp.2d 606, 610, 611 (E.D. Va. 2008) ("Applying the clear and unambiguous language of [18 U.S.C.] § 2702 to this case, AOL, a corporation that provides electronic communication services to the public, may not divulge the contents of the Rigsbys' electronic communications to State Farm because the statutory language of the Privacy Act does not include an exception for the disclosure of electronic communications pursuant to civil discovery subpoenas."); see also Viacom Int'l Inc. v. Youtube, Inc., 253 F.R.D. 256, 264 (S.D.N.Y. 2008) (holding that the SCA prohibits disclosure of electronic communications pursuant to a civil subpoena because the SCA "contains no exception for disclosure of such communications pursuant to civil discovery requests").

Chasten v. Franklin, No. C10-80205 MISC JW (HRL), 2010 WL 4065606, at *2 (N.D. Cal. Oct. 14, 2010) (granting defendant's motion to quash subpoena issued by plaintiff seeking emails stored by Yahoo!).

Metadata associated with electronic communications, however, are not considered to be content protected by the SCA. Chevron Corp. v. Donziger, Case No. 12-mc-80237 CRB (NC), 2013 WL 4536808, at *6 (N.D. Cal. Aug. 22, 2013). In fact, the SCA expressly permits the

disclosure of such data. 18 U.S.C. § 2702(c)(6) (an electronic communication service provider "may divulge a record or other information pertaining to a subscriber to or customer of such service (not including the contents of communications . . .) . . . to any person other than a government entity."). This allowance includes a subscriber's name, address, records of session times and durations, telephone or instrument number, or other subscriber number or identity. Donziger, 2013 WL 4536808, at *6 (citing § 2703(c)(2)); see also Optiver Australia Pty. Ltd. & Anor. v. Tibra Trading Pty. Ltd. & Ors., No. C 12-80242 EJD (PSG), 2013 WL 256771, at *3 (N.D. Cal. Jan. 23, 2013) (allowing "non-content metadata" to be disclosed to plaintiff pursuant to a discovery subpoena).

Here, the subpoena to Comcast seeks the content of Scramlin's emails, which is prohibited under the SCA. Chasten, 2010 WL 4065606, at *2. However, the metadata are not protected under the SCA. Therefore, as explained below, the Court will modify the subpoena to require disclosure of the metadata.[6]

The Court is permitted to modify a subpoena. Englar v. 41B Dist. Ct., Civil Action No. 04-CV-73977, 2009 WL 3497801, at *6 (E.D. Mich. Oct. 29, 2009) (holding that the "'decision whether to quash, modify, or condition a subpoena is within the district court's discretion.'" (quoting 9A Charles Alan Wright & Arthur R. Miller, et al., Federal Practice and Procedure § 2463 (3d ed. 1998)). The proper exercise of discretion turns on reasonableness. Id. Courts must "balance the interests served by demanding compliance with the subpoena against the interests furthered by quashing it; this process of weighing a subpoena's benefits and burdens calls upon the trial court to consider whether the information is necessary and whether it is available from any

---

[6] As Scramlin recognizes, the SCA does not protect the metadata of his phone records, which is the only information sought by SPS's subpoena to AT&T. Therefore, the Court will not quash that subpoena.

other source." Id. The inquiry, by necessity, is fact-specific. Id.

In balancing the interests served by demanding compliance with the modified subpoena with the interests furthered by quashing the subpoena, the Court concludes that the balances tip in favor of compliance, as permitted by the SCA. As noted above, the SCA does not protect metadata, and this information may reveal the extent to which Scramlin communicated with others via email regarding bids for the ABCT contract. Donziger, 2013 WL 4536808, at *6. This information is directly related to SPS's claims and is not readily available from any other source. Englar, 2009 WL 3497801, at *6. Furthermore, the burden of complying with the subpoena does not fall upon Scramlin, it falls upon Comcast — which has not objected to the subpoena.

Therefore, the Court shall order SPS to modify its Comcast subpoena so that it requests only metadata.

### 5. Relevance and Harassment

Having determined that the type of information sought by SPS is not barred by the SCA — the metadata associated with Scramlin's phone records and the metadata associated with emails from 2013 — the Court now addresses Scramlin's arguments that the requested information is irrelevant and that the subpoenas are harassing.

Rule 26(b) defines the scope of discovery for all discovery tools, including a subpoena issued pursuant to Rule 45. Fed. R. Civ. P. 45 Advisory Comm.'s Note (1970) ("[T]he scope of discovery through a subpoena is the same as that applicable to Rule 34 and other discovery rules."); Fed. R. Civ. P. 34(a) ("A party may serve on any other party a request within the scope of Rule 26(b)."). Rule 26(b) allows a party to obtain discovery concerning any non-privileged matter that is relevant to any party's claim or defense. Fed. R. Civ. P. 26(b)(1).

Under Rule 26, SPS is entitled to learn whether Scramlin was in contact with Macik and/or

other individuals or entities concerning the information protected by the applicable employment agreement and fiduciary duties. Because SPS's theory is that Scramlin breached his duties through such contacts, the information sought would touch on matters that fall within the heartland of what is relevant to SPS's claims. Thus, the information requested by the subpoenas is within the scope of discovery. Fed. R. Civ. P. 26(b)(1).

The Court rejects Scramlin's argument — lacking citation to any law — that the subpoenas are harassing. Harassment is typically found where a party requests information that is only remotely connected to the case, see, e.g., Rossbach v. Rundle, 128 F. Supp. 2d 1348, 1354 (S.D. Fla. 2000) (denying party's discovery request regarding office rumors "with little or no regard for the subject matter of those rumors," because the requested information was only "remotely relevant" and potentially unfairly prejudicial under Federal Rule of Evidence 403), or a party has sent subpoenas for an improper purpose, see, e.g., Williams v. City of Dallas, 178 F.R.D. 103, 112 (N.D. Tex. 1998) (rejecting third parties' argument that subpoenas were harassing because the third parties could not show that the issuance of the subpoenas was vindictive and concluding that the subpoenas sought relevant evidence). Here, as noted above, the subpoenas target relevant information. Furthermore, the Court does not discern an improper purpose. As the SCA protects the contents of Scramlin's emails, and the Court has ordered that the subpoenas be modified for the provision only of metadata — not content — the subpoenas do not intrude into potentially sensitive matters.

Accordingly, Scramlin's motion to quash is granted in part and denied in part, as follows: (i) the AT&T subpoena is not quashed; and (ii) the Comcast subpoena shall be modified to set forth only a request for metadata, i.e. "all usage records for outgoing emails from and incoming

emails to jscramlin01@comcast.net for the period January 1, 2013 through December 31, 2013."[7]

## IV. CONCLUSION

For the reasons set forth above, the Court denies Scramlin's motion to dismiss (Dkt. 14) and grants in part and denies in part Scramlin's motion to quash (Dkt. 21).

SO ORDERED.

Dated: August 8, 2014　　　　　　　　　　　s/Mark A. Goldsmith
　　　Flint, Michigan　　　　　　　　　　　　MARK A. GOLDSMITH
　　　　　　　　　　　　　　　　　　　　　United States District Judge

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on August 8, 2014.

　　　　　　　　　　　　　　　　　　　　　s/Deborah J. Goltz
　　　　　　　　　　　　　　　　　　　　　DEBORAH J. GOLTZ
　　　　　　　　　　　　　　　　　　　　　Case Manager

---

[7] By modifying the Comcast subpoena, the Court need not presently address SPS's argument that the Court has the authority to require Scramlin to provide consent for the production of his emails. Pl. Br. at 15. Should the discovery produced pursuant to the subject subpoenas leave SPS unsatisfied, the Court can address this issue upon the filing of a new motion for appropriate relief.